P. Bruce Converse (AZ 005868)
bconverse@dickinsonwright.com
Bradley A. Burns (AZ 030508)
bburns@dickinsonwright.com
Amanda E. Newman (AZ 032462)
anewman@dickinsonwright.com
**DICKINSON WRIGHT PLLC**
1850 North Central Avenue, Suite 1400
Phoenix, Arizona 85004
Telephone: (602) 285-5000
Facsimile: (844) 670-6009
Firm Email: courtdocs@dickinsonwright.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Armored Republic, LLC d/b/a AR500 Armor, an Arizona limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>Diamond Age Corp., a Delaware corporation,<br><br>Defendant. | **Case No. 2:20-cv-01366-DLR**<br><br>**VERIFIED FIRST AMENDED COMPLAINT**<br><br>**(Declaratory Judgment; Wrongful Termination of Contract; Injunctive Relief; Breach of Contract; Breach of Warranty; UCC)**<br><br>**(Hon. Douglas L. Rayes)** |

Plaintiff Armored Republic, LLC d/b/a AR500 Armor ("Armored Republic" or "Plaintiff"), pursuant to Rule 15(a)(1), alleges as follows for its Verified First Amended Complaint against Defendant Diamond Age Corp. ("Diamond" or "Defendant"):

**JURISDICTIONAL ALLEGATIONS**

1. Plaintiff Armored Republic is an Arizona limited liability company with its principal place of business in Maricopa County.

2. Defendant Diamond is a Delaware corporation (with headquarters in Texas) that does business in Maricopa County and whose contract with Plaintiff to do business in Maricopa County is the subject of this lawsuit. Specifically, Diamond has

1

directly sold products to Armored Republic for delivery in Maricopa County; those product sales and deliveries, and related failures, are the subject of this lawsuit.

3. The events, acts, and omissions complained of herein occurred in Maricopa County. This lawsuit arises from Diamond's breaches of a contract between Armored Republic and Diamond to be performed in Maricopa County, which contains a provision by which the parties agreed to exclusive jurisdiction in the federal and state courts located in Maricopa County and expressly consented to the jurisdiction of such courts.

4. Jurisdiction and venue are proper before this Court.

5. Plaintiff seeks relief that qualifies for standard discovery as described for Tier 3, pursuant to Arizona Rule of Civil Procedure 26.2(c)(3).

## **GENERAL ALLEGATIONS**

6. Armored Republic is an Arizona company that manufactures and sells ballistic armor, body armor, and other products.

7. Diamond also develops and manufactures certain ballistic protection products.

8. Armored Republic and Diamond entered an "AR500 Armor Marketing and Distribution Agreement" (the "Distribution Agreement") dated September 10, 2019.

9. The Distribution Agreement provided that Armored Republic would be the "exclusive Authorized Master Distribution" (in the United States and in most areas of the world) of certain helmets and other products developed and/or manufactured by Diamond, set forth in Exhibit A of the Distribution Agreement (the "Products").

10. Specifically, Diamond would produce the Products, and Armored Republic would market and sell them.

11. The price Armored Republic is obligated to pay to Diamond for the Products is based on a "cost-plus" arrangement — i.e., the cost of manufacturing each specific Product (subject to periodic auditing) plus a percentage-based markup.

12. The parties agreed upon initial prices for certain items under that cost-plus arrangement. The Distribution Agreement provides for periodic recalculation of those prices.

13. Specifically, the parties agreed that the standard price per "shell" (a specific Product) would be $120. However, the parties further agreed that Armored Republic's initial orders would be for a discounted $95 per shell.

14. Section 6(d) of the Distribution Agreement provides that, if Armored Republic determines that Diamond's costs for manufacturing the Products are unreasonable, Armored Republic:

> shall have the right manufacture [to] the Products itself or enter into a contract with a third party for the manufacture thereof, provided, however, that [Armored Republic] pays [Diamond] the markup on the costs thereof. . . . Alternatively, at [Armored Republic's] sole election, [Armored Republic] may elect to arrange for the purchase of substantially similar materials at a lower costs; [Diamond] shall be obligated to cooperate and accept the lower cost materials in the computation of costs [for determining the price of Products under the Distribution Agreement].

15. The Distribution Agreement contains other relevant terms, some of which are described following.

16. Section 4(a) of the Distribution Agreement provides that Diamond shall manufacture new Products as reasonably requested by Armored Republic and shall modify Products as reasonably requested by Armored Republic. Those new Products are subject to an automatic pricing calculation method.

17. Section 4(f) of the Distribution Agreement provides that Diamond shall establish and maintain quality control procedures, Product testing, and other customary programs as necessary to ensure the Products are "of the highest quality and reliability."

4842-2715-5138 v5 [68273-48]

18. Section 5(c) of the Distribution Agreement provides that Diamond shall deliver Products within 60 days of receiving a Product order from Armored Republic, subject to deduction of a portion of the price otherwise payable to Diamond for the Products if delivery is late.

19. Section 9(a) of the Distribution Agreement provides that the Products shall be covered by Diamond's standard warranty and that, furthermore, Diamond shall warrant the Products against defects in material and workmanship.

20. In Section 12 of the Distribution Agreement, Diamond granted Armored Republic "an exclusive, royalty-free, perpetual, irrevocable license to any . . . patents, designs, trade secrets, copyrights, trademarks, databases, know-how and all other intellectual property rights, in each case whether registered or unregistered, which are necessary for distribution, sales, manufacture and use of Products."

21. Armored Republic began marketing and selling the Products, pursuant to the Distribution Agreement.

22. However, Diamond was unable to meet its obligations under the Distribution Agreement.

23. In breach of Distribution Agreement Section 5(c), Diamond has made untimely delivery of Products. For example, an order placed by Armored Republic in October 2019 had a delivery deadline in December 2019 but did not arrive until February 2020.

24. Based on representations from Diamond about the quality of the Products and the anticipated delivery dates, Armored Republic received orders from hundreds of customers, the majority of whom are still awaiting quality Products.

25. Further in breach of Section 5(c), Diamond's deliveries of Products, when they have arrived, have been incomplete, partial shipments. Items that were ordered

4

have been omitted from deliveries, have been supplied in lower quantities than what was ordered, or have been supplied in different sizes from what was ordered.

26. In breach of Distribution Agreement Sections 4(f) and 9(a), Diamond's shipments have been defective and/or of inferior quality. For example, Velcro dots have been incorrectly matched to helmets, helmets have not fit the represented sizes, pads have been the incorrect size for the Products, and items have been sent that did not fit their intended purpose.

27. The breaches described herein are merely examples and not an exclusive list of Diamond's breaches of the Distribution Agreement.

28. Diamond has also threatened to further breach the Distribution Agreement by selling the Products to third parties instead of to Armored Republic. This would be a breach of Section 1 of the Distribution Agreement, which provides that Armored Republic will be the "exclusive Authorized Master Distribution" in the United States and all other areas of the world other than the Czech Republic, Austria, Switzerland, and Germany of the Products for the Term of the Distribution Agreement. Section 1(b), "True Exclusivity," further provides:

> [Diamond] shall not sell or distribute the Products to any person other than [Armored Republic] without advance written permission signed by the President or Chief Executive Officer of [Armored Republic]. [Diamond] expressly acknowledges that no other person, including other employees and agents of [Armored Republic], has authority to grant such permission. The Parties agree that [Diamond] may sell and distribute its products in the Czech Republic, Austria, Switzerland, and Germany, however, [Diamond] shall prohibit the exportation of the Products from those countries.

29. Diamond's many breaches of the Distribution Agreement and continuing failure to meet its order fulfillment obligations under the Distribution Agreement appear to be due to Diamond's inability to effectively manage the production of the Products and control costs related thereto.

4842-2715-5138 v5 [68273-48]

30. For example, after Diamond informed Armored Republic that it needed funds to be able to pay its vendors to correct problems with delivered Products, Armored Republic paid Diamond deposits beyond those required under the Distribution Agreement.

31. Armored Republic has determined that the costs of manufacturing the Products, which apparently cannot be met even with the increased deposits paid by Armored Republic, are unreasonable, pursuant to Distribution Agreement Section 6(d). This is due in part to the need to correct repeated quality problems in the Products delivered by Diamond.

32. Addressing Diamond's repeated breaches, delivery failures, quality problems, and other issues has also caused increased costs for Armored Republic.

33. Armored Republic has, on multiple occasions, given written notice to Diamond of its breaches of the Distribution Agreement and demanded that they be cured.

34. Armored Republic has further notified Diamond that it is invoking its right, pursuant to Distribution Agreement Section 6(d), to assume control of the manufacturing of the Products, due to the unreasonable costs.

35. Diamond improperly refused to provide Armored Republic with information about the manufacture of the Products, including information regarding the country of origin that may be necessary for certain product labeling and sale.

36. Despite demand, Diamond has failed to correct its breaches of the Distribution Agreement and has refused to cede control of manufacturing the Products to Armored Republic.

4842-2715-5138 v5 [68273-48]

37. In fact, on May 18, 2020 (after the original Complaint in this lawsuit was filed but before it was served), Diamond sent Armored Republic a Notice of Termination for Cause, in which it purported to terminate the Distribution Agreement.

38. Diamond's Notice of Termination for Cause was baseless and had no effect.

39. On June 16, 2020, Armored Republic sent Diamond Purchase Order No. 5200 ("PO #5200"), pursuant to the Distribution Agreement. Armored Republic sent Diamond a modified PO #5200 on or around June 22, 2020.

40. On June 25, 2020, Diamond informed Armored Republic in writing that it would "[a]bsolutely not" fulfill PO #5200, that it "does not agree or intend to agree to fulfill any future orders submitted by [Armored Republic]," and that "Diamond Age will not fill any further purchase orders from [Armored Republic]."

41. Diamond's refusal to fulfill PO #5200 constitutes a further breach of the Distribution Agreement.

42. Diamond's statements that it will not fulfill any future orders by Armored Republic constitutes an anticipatory breach of Diamond's obligations under the Distribution Agreement.

43. The harm being caused to Armored Republic by Diamond's breaches, Diamond's inability to manage production and deliver products, Diamond's unreasonable costs, and Diamond's refusal to allow Armored Republic to assume control of manufacturing the Products is substantial.

44. For example, Armored Republic has been unable to fulfill the majority of orders of the Products placed by Armored Republic's customers (due to not receiving the Products from Diamond). The majority of customers who have ordered the Products from Armored Republic are still waiting for those unfulfilled orders.

4842-2715-5138 v5 [68273-48]

45. Armored Republic's inability to fill customer orders, as well as the defects and quality issues in the Products, has caused Armored Republic reputational damage and/or has injured its brand.

46. Additionally, Armored Republic has lost profits that it would have made by selling the Products, had it timely, and in good quality, received the Products it ordered.

47. Due to Diamond's failure to cooperate with Armored Republic to resolve the supply chain and product quality issues, as well as Diamond's statement that it will not fulfill future orders for Armored Republic, Armored Republic's damages are continuing to accrue.

48. Diamond has waived, in writing, any requirement to proceed to mediation or arbitration before litigation.

## CLAIM ONE

### (Declaratory Judgment)

49. Plaintiff re-alleges and incorporates by this reference the preceding paragraphs of the Complaint as if fully set forth herein.

50. This claim is brought pursuant to the Uniform Declaratory Judgments Act, A.R.S. § 12-1831 *et seq.*, and Ariz. R. Civ. P. 57.

51. As described above, Diamond maintains that it has terminated the Distribution Agreement.

52. Armored Republic's position is that Diamond had no basis for terminating the Distribution Agreement, Diamond's purported termination had no effect, and the Distribution Agreement remains in effect.

53. Armored Republic desires to remain in a contractual relationship with Diamond.

54. A justiciable controversy exists regarding whether the Distribution Agreement remains in effect and is binding on Diamond.

55. Armored Republic is entitled to a declaration by the Court that the Distribution Agreement remains in effect and is binding on Diamond.

## CLAIM TWO

**(Wrongful Termination of Contract — Alternative Claim)**

56. Plaintiff re-alleges and incorporates by this reference the preceding paragraphs of the Complaint as if fully set forth herein.

57. The Distribution Agreement is a contract between Armored Republic and Diamond.

58. Armored Republic performed all of its obligations and met all conditions precedent under the Distribution Agreement.

59. As set forth above, Diamond's purported termination of the Distribution Agreement was baseless.

60. As set forth in Claim One, Armored Republic desires to remain in a contractual relationship with Diamond and seeks a declaration by the Court that the Distribution Agreement remains in effect and is binding on Diamond.

61. If the Court does not enter a declaration that the Distribution Agreement remains in effect and is binding on Diamond, as sought by Claim One, Armored Republic is entitled, in the alternative, to damages for Diamond's wrongful termination of the Distribution Agreement in an amount, to be proven at trial, equal to Armored Republic's anticipated profits over the balance of the Term of the Distribution Agreement.

## CLAIM THREE

### (Declaratory Judgment)

62. Plaintiff re-alleges and incorporates by this reference the preceding paragraphs of the Complaint as if fully set forth herein.

63. This claim is brought pursuant to the Uniform Declaratory Judgments Act, A.R.S. § 12-1831 *et seq.*, and Ariz. R. Civ. P. 57.

64. As described above, and for the reasons described above, Armored Republic has concluded that Diamond's costs for manufacturing the Products are unreasonable, pursuant to Distribution Agreement Section 6(d).

65. Armored Republic has notified Diamond of this conclusion.

66. Armored Republic has further notified Diamond that it is, thus, invoking its right pursuant to Distribution Agreement Section 6(d) to assume control of manufacturing the Products.

67. Diamond has rejected that invocation, denied that Armored Republic has such a right under the Distribution Agreement, and refused to cede control of manufacturing the Products to Armored Republic.

68. A justiciable controversy exists regarding whether Armored Republic is entitled to assume control of manufacturing the Products or otherwise is permitted to engage in self-help and arrange for the manufacture of the Products itself.

69. Armored Republic is entitled to a declaration by the Court that: (a), based on the facts and Armored Republic's conclusion that Diamond's costs for manufacturing the Products are unreasonable, pursuant to Distribution Agreement Section 6(d), Armored Republic is entitled to assume control of manufacturing the Products, (b) Armored Republic has exercised that right, and (c) Diamond must cooperate in that process.

4842-2715-5138 v5 [68273-48]

## CLAIM FOUR

### (Injunctive Relief)

70. Plaintiff re-alleges and incorporates by this reference the preceding paragraphs of the Complaint as if fully set forth herein.

71. As set forth above, Armored Republic is entitled to a declaration that it may assume control of manufacturing the Products, that it has exercised that right, and that Diamond must cooperate in that process.

72. Armored Republic is accordingly also entitled to injunctive relief in the form of an order that Diamond cooperate by permitting and facilitating the following: Armored Republic's direct payment to vendors involved in manufacturing/production of the Products, Armored Republic's assumption of control/management of production of the Products, Armored Republic's assumption of control/management of shipment and delivery of the Products, and Armored Republic's assumption of control/management of all other tasks involved in and/or necessary to manufacturing/production/delivery of the Products.

73. Furthermore, in light of Diamond's apparent threat to sell the Products to parties other than Armored Republic in violation of the exclusivity provisions in Section 1 of the Distribution Agreement, Armored Republic is entitled to injunctive relief in the form of an order prohibiting Diamond from selling the Products or otherwise acting inconsistent with the provisions of Section 1 of the Distribution Agreement during the Term of the Distribution Agreement.

## CLAIM FIVE

### (Breach of Contract)

74. Plaintiff re-alleges and incorporates by this reference the preceding paragraphs of the Complaint as if fully set forth herein.

4842-2715-5138 v5 [68273-48]

75. The Distribution Agreement is a contract between Armored Republic and Diamond.

76. Implied in the Distribution Agreement is a covenant of good faith and fair dealing.

77. Armored Republic performed all of its obligations and met all conditions precedent under the Distribution Agreement.

78. Diamond breached the Distribution Agreement by, inter alia, not timely delivering Products, not delivering Products that were ordered, making partial and/or incomplete deliveries of orders, delivering Products that were defective and/or of inferior quality, and overall failing to meet its obligations under the Distribution Agreement to provide Armored Republic with an inventory of Products for Armored Republic to market and sell. This is a nonexclusive list of Diamond's breaches. Diamond's breaches are ongoing.

79. Diamond's breaches also include Diamond's refusal to fulfill PO #5200. This refusal is a breach of, inter alia, Paragraph 5 of the Distribution Agreement.

80. Diamond has further anticipatorily breached the Distribution Agreement by stating that it will not fulfill any future orders under the Distribution Agreement.

81. Armored Republic has made demand for Diamond to remedy its breaches and comply with its obligations under the Distribution Agreement. Diamond has failed and refused to remedy its breaches and comply with those obligations.

82. Diamond's acts described herein also constitute breaches of the covenant of good faith and fair dealing.

83. In one nonexclusive example, Diamond's refusal to provide Armored Republic with information about the manufacture of the Products, including information regarding the country of origin that may be necessary for certain product labeling and

12

sale, has impaired Armored Republic's right to receive the benefits of the Distribution Agreement and thus breached the covenant of good faith and fair dealing.

84. In another nonexclusive example, Diamond's failure and refusal to facilitate Armored Republic's assumption of control of manufacturing the Products has impaired Armored Republic's right to receive the benefits of the Distribution Agreement and thus breached the covenant of good faith and fair dealing.

85. As a remedy for Diamond's breaches, Armored Republic is entitled to specific performance of the Distribution Agreement. Specifically, Armored Republic is entitled to an order that Diamond promptly deliver all undelivered Products that have been ordered, remedy all defect/quality issues, and otherwise perform under the Distribution Agreement.

86. Armored Republic is further entitled to damages as a remedy for Diamond's breaches. Diamond's breaches have damaged Armored Republic in an amount to be proven at trial but no less than $500,000 as of the filing of this Complaint. Armored Republic's damages include, but are not limited to, costs for dealing with and attempting to remedy the breaches and inability to obtain a supply of the Products, reputational/brand damages, and lost profits for Products that Armored Republic would have sold if it had been able to obtain them pursuant to the Distribution Agreement. Those damages are continuing to accrue.

## CLAIM SIX

### (Breach of Warranty)

87. Plaintiff re-alleges and incorporates by this reference the preceding paragraphs of the Complaint as if fully set forth herein.

88. Section 9(a) of the Distribution Agreement contains and incorporates certain warranties. Specifically, Diamond agreed that the Products shall be covered by

Diamond's standard warranty and, further, agreed that it would specifically warrant the Products against defects in material and workmanship.

89. Diamond breached the warranties contained in and incorporated into Section 9(a) by, inter alia, providing Products to Armored Republic that were defective in materials and/or workmanship, were unfit for the purpose for which they were intended, and contained other defect and/or quality issues.

90. Armored Republic gave Diamond notice of that breach and demanded that it be cured.

91. Diamond's breaches of its warranties are ongoing.

92. As a remedy for Diamond's breaches, Armored Republic is entitled to specific performance of Diamond's warranties. Specifically, Armored Republic is entitled to an order that Diamond remedy all defect/quality issues, promptly deliver Products that conform with Diamond's warranties in replacement with all such Products as have not conformed, and otherwise perform under its warranties.

93. Armored Republic is further entitled to damages as a remedy for Diamond's breaches. Diamond's breaches have damaged Armored Republic in an amount to be proven at trial but no less than $500,000 as of the filing of this Complaint. Armored Republic's damages include, but are not limited to, costs for dealing with and attempting to remedy the breaches of Diamond's warranties, reputational/brand damages, and lost profits for Products that Armored Republic would have sold if it had been able to obtain Products that complied with Diamond's warranties. Those damages are continuing to accrue.

## CLAIM SEVEN

### (UCC Claim)

94. Plaintiff re-alleges and incorporates by this reference the preceding paragraphs of the Complaint as if fully set forth herein.

95. The Distribution Agreement is a contract covered by and within the scope of the Uniform Commercial Code ("UCC"), A.R.S. §§ 47-1101 *et seq.*, and Diamond's sales of the Products to Armored Republic are transactions covered by and within the scope of the UCC.

96. In connection with that contract and those transactions, Diamond made all express and implied warranties provided for in the UCC and/or supported by the Distribution Agreement, the usage of trade, or the parties' communications and course of dealing. These include, without limitation, warranties of merchantability and fitness for particular purpose.

97. Diamond delivered nonconforming goods to Armored Republic. The goods did not conform to the terms of the Distribution Agreement, did not conform to Armored Republic's purchase orders, did not conform to the requirements of the UCC, and/or did not conform to Diamond's express or implied warranties, under the UCC or otherwise.

98. Armored Republic was, and is, entitled to exercise all rights and remedies pursuant to the UCC in response to Diamond's deliveries of nonconforming goods.

99. Armored Republic will be entitled to exercise all rights and remedies pursuant to the UCC in response to Diamond's future deliveries of any nonconforming goods.

4842-2715-5138 v5 [68273-48]

100. Armored Republic is further entitled to exercise all rights and remedies for breach pursuant to the UCC based on Diamond's anticipatory repudiation of the contract.

101. Armored Republic's rights and remedies include, without limitation, the right to "cover" and recover damages (A.R.S. § 47-2712), the right to recover damages for nondelivery or repudiation (A.R.S. § 47-2713), the right to recover damages for breach in regard to accepted goods (A.R.S. § 47-2714), the right to recover incidental and consequential damages (A.R.S. § 47-2715), the right to specific performance or replevin (A.R.S. § 47-2716), and the right to deduct damages from the price (A.R.S. § 47-2717).

102. Armored Republic has exercised one or more of those rights.

103. For example, Armored Republic notified Diamond that it was deducting from the price it paid for delivered Products the damages it incurred in remedying the nonconforming nature of the Products.

104. Pursuant to the UCC, Armored Republic is entitled to specific performance of the Distribution Agreement, damages (including incidental and consequential damages) and/or deductions for all past nonconforming deliveries and nondeliveries, damages (including incidental and consequential damages) and/or deductions for all nonconforming deliveries and nondeliveries that may occur during the pendency of the lawsuit, damages (including incidental and consequential damages) for any anticipatory breaches that are not remedied with an order of specific performance, and any damages Armored Republic may incur in exercising its right to cover (if it chooses to due so).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment in its favor and against Defendant,

4842-2715-5138 v5 [68273-48]

awarding Plaintiff the following relief:

A. A declaration that the Distribution Agreement remains in effect and is binding on Diamond, or, in the alternative, damages for Diamond's wrongful termination of the Distribution Agreement in an amount, to be proven at trial, equal to Armored Republic's anticipated profits over the balance of the Term of the Distribution Agreement;

B. A declaration that Armored Republic is entitled to assume control of manufacturing the Products, that Armored Republic has exercised that right, and that Diamond must cooperate in that process;

C. Injunctive relief, in the form of an order that Diamond cooperate by permitting and facilitating the following: Armored Republic's direct payment to vendors involved in manufacturing/production of the Products, Armored Republic's assumption of control/management of production of the Products, Armored Republic's assumption of control/management of shipment and delivery of the Products, and Armored Republic's assumption of control/management of all other tasks involved in and/or necessary to manufacturing/production/delivery of the Products;

D. Injunctive relief in the form of an order prohibiting Diamond from selling the Products to other parties outside the scope of Section 1 or otherwise acting inconsistent with the provisions of Section 1 of the Distribution Agreement during the Term of the Distribution Agreement.

E. Specific performance, in the form of an order that Diamond promptly deliver all undelivered Products that have been ordered, remedy all defect/quality issues, promptly deliver Products that conform with Diamond's warranties in replacement with all such Products as have not conformed, and otherwise perform under the Distribution Agreement and under Diamond's warranties;

17

4842-2715-5138 v5 [68273-48]

F. Compensatory damages for Diamond's breaches of the Distribution Agreement and its warranties in an amount to be proven at trial but no less than $500,000;

G. Compensatory damages, including incidental and consequential damages, incurred by Armored Republic from Diamond's nonconforming deliveries and nondeliveries pursuant and in exercising Armored Republic's rights and remedies thereto, in an amount to be proven at trial but no less than $500,000;

H. Pre- and post-judgment interest at the maximum amount permitted by law;

I. Plaintiff's attorneys' fees and costs incurred herein, in accordance with Section 22(g) of the Distribution Agreement and A.R.S. §§ 12-341 and 12-341.01; and

J. Such other and further legal and/or equitable relief as the Court deems just and proper under the circumstances.

**DATED** this 28th day of July, 2020.

**DICKINSON WRIGHT PLLC**

By: *s/ Bradley A. Burns*
P. Bruce Converse
Bradley A. Burns
Amanda E. Newman
1850 North Central Avenue, Suite 1400
Phoenix, Arizona 85004
*Attorneys for Plaintiff*

**VERIFICATION**

I, Geoffrey Schultz, hereby declare as follows:

1. I am a representative and authorized signer for Armored Republic LLC, the Plaintiff in this action.

2. I have read the foregoing Verified First Amended Complaint and know the contents thereof.

3. I have personal knowledge of the facts alleged in the Verified Complaint. I declare, under penalty of perjury, that the factual matters stated therein are true and correct to the best of my knowledge, information, and belief.

Dated this __28th__ day of July, 2020.

_____
Geoffrey Schultz

19

4842-2715-5138 v5 [68273-48]

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2020, I electronically transmitted the attached document to the Clerk of the Court using the CM/ECF system, and which will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants.

By: _s/ Nicole Francini_

4842-2715-5138 v5 [68273-48]