THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING
TO FEDERAL AND/OR LOCAL RULES AND PRACTICES
AND IS SUBJECT TO REJECTION BY THE COURT

REFERENCE CJVLR 5.4 (Section)

FILED ✓   LODGED ___
RECEIVED ___ COPY ___
MAY 0 6 2021
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

Diamond Age Corp.
1215 S. Kihei Rd. Ste O# 339,
Kihei, Hawaii 96753
Telephone: 808-359-7789
Jake Ganor
President, Diamond Age.
Jakeganor@gmail.com
Pro Se on Behalf of Defendant

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Armored Republic, LLC d/b/a AR500 Armor, an Arizona limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>Diamond Age Corp., a Delaware corporation,<br><br>Defendant. | NO. 2:20-cv-01366-DLR<br><br>**MOTION TO PROCEED PRO SE AND REQUEST FOR STAY** |

Defendant Diamond Age Corp., in the above-captioned action by Armored Republic, LLC d/b/a AR500 Armor, hereby respectfully requests that the Court allow its President and sole shareholder to represent it pro se.

Defendant is aware of the longstanding precedent prohibiting corporate pro se representation, but, for the following reasons, believes that reconsideration is merited.

**A. Argument**

**1. There is Little Justification for the Rule Prohibiting Corporate Pro Se Representation.**

The rule prohibiting corporate pro se representation in the United States is nearly 200 years old, dating back to *Osburn v Bank of the United States*, 22 US 738 (1824),

where the Supreme Court noted in passing that "*[a] corporation, it is true, can appear only by attorney, while a natural person may appear for himself.*" Osburn has been repeatedly cited to that effect in the nearly two centuries since, and although no rationale was given for the rule in Osburn, subsequent court opinions and judgments have filled in the blanks.

Osburn has been justified on theoretical grounds in a manner that can be summarized very simply: As corporations are not natural persons, they can act only via agents and officers. Therefore, if they are to act in court they must act via officers of the court, i.e. via lawyers.

This justification, however old and frequently-cited, does not hold up to scrutiny. It is self-evidently circular; it assumes its own conclusion. As Judge Timothy Cotner put it in *May a Corporation Act as Its Own Attorney*, 16 Clev.-Marshall L. Rev. 173 (1967), it does not answer "*why corporations need agents in a courtroom and why can't actions of natural people impute to the corporation's action in its own right just as they do in every other instance.*"

After all, corporations are afforded the rights to sue and be sued, to enter into contracts, to testify in court as 30(b)(6) witnesses, and to defend themselves and press claims in small claims court, among many other constitutionally granted rights. When testifying in court, and when defending themselves in small claims court, corporations stand on equal footing with natural persons. In such instances, they don't require an outside agent — and, indeed, are frequently barred from employing outside agents. In such cases, "the corporation appears *in propria persona* through some proper

representative." *Prudential Ins. Co v Small Claims Court*, 76 Cal. App. 2d 379 at 384, 385. These instances illustrate that it is possible for a corporation to represent itself in court on its own behalf, through a non-lawyer representative — that it is possible for a corporation, despite being an artificial entity, to take action in a court of law in the United States of America.

It is important to emphasize that when a corporation appears in small claims court, it is simply appearing pro se, as any other plaintiff or defendant would appear pro se. The person representing the corporation *is* the corporation for the claim or defense; the corporation is not appearing via an "other person." This highlights the notion that corporations can, in certain court settings, possess agency, and that the notion that they must always act via an outside agent in court is malleable, rather than set in stone.

Thus corporations *can* act on their own behalf in court, *when they are given leave*. It is not that they *cannot* act on their own behalf and therefore *must* employ an agent, but that they are, as a *general* rule, *not given leave* to act on their own behalf in court.

A secondary, but still relatively oft-repeated interpretation derived from Osburn holds that directors or officers of corporations are constitutionally unfit to argue cases pro se. This derives not from law or statute, but from concerns that permitting non-attorney corporate parties to bring claims invites abuse of court processes and unscrupulous conduct. This position was articulated in *Brandstein v. White Lamps*, 20 F. Supp. 369 (S.D.N.Y. 1937):

> "Were it possible for corporations to prosecute or defend actions in person, through their own offices, men unfit by character and training, men,

*whose credo is that the end justifies the means, disbarred lawyer or lawyers of other jurisdiction would soon create opportunities for themselves as officers of certain classes of corporations and then freely appear in our courts as a matter of pure business not subject to the ethics of our profession or the supervision of our bar associations and the disciplines of our courts."*

This also fails to hold up to scrutiny, for the ruling in *Brandstein* makes a baseless empirical claim that men of business are "unfit by character" to represent themselves in court. Leaving aside for a moment the question of whether or not this is true, the federal courts have been inundated for *decades* with pro se litigation from people in the prison system. If the legal system can allocate vast resources to hear thousands of cases per year from convicted criminals, who have already proven themselves to be "unfit by character" for free participation in society, perhaps it might also be able to make room for small business owners.

And are men of business inherently less ethical than officers of the court? This empirical proposition has been evaluated in the context of commercial and regulatory law by Parker et al. in the Georgetown Journal of Legal Ethics. (See: Parker et al., *The Two Faces of Lawyers: Professional Ethics and Business Compliance With Regulation.* Georgetown Journal of Legal Ethics, Vol. 22, 2009.) Their analysis indicates that lawyers are no more ethical than the businessmen who employ them, and may be less ethical, in that "[o]ur data suggest that to the extent lawyers influence clients, it is towards game-playing, not commitment to compliance or resistance to compliance."

Further, the overall impression received by Parker is that: "*lawyers supply*

4

*services that incline clients to increasingly accept legal risk and adopt a gamester approach to law and regulation.*"

Clearly, this does not suggest that lawyers have a monopoly on ethics. Thus the notion that lawyers are uniquely or especially ethical, and that non-lawyer businessmen are too unethical to be trusted to defend themselves in court, seems to be at minimum unfounded, and *is apparently simply false as an empirical proposition.*

In any case, this secondary interpretation of Osborn also *wholly disregards the court's ability to manage litigation* under Rule 11, 28 U.S.C. 1927, the rules regarding discovery abuse, and the court's inherent power. Disbarred lawyers who improperly attempt to weasel their way back into the courtroom by declaring themselves officers of corporations can, and probably should, be sanctioned or held in contempt. That does not apply in this case, nor does it seem that it should apply in any case where the party in question is named defendant — i.e., is not in court of his or her own free will.

Ultimately, the reasons given for the prohibition on corporate pro se representation have scant logical and factual justification.

**2. The expansion of corporate rights 2008-present.**

The Supreme Court has explicitly stated that a precedent can be overruled if its logic has been weakened by intervening decisions, and such gradual erosion is often how a once-important precedent loses its force, whether or not it is ever formally overruled.

Corporations have long been considered "persons." As Justice Brennan explained in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 687 (1978)., "by 1871, it was

5

well understood that corporations should be treated as natural persons for virtually all purposes of constitutional and statutory analysis."

The Dictionary Act, 1 U.S.C. 1, notes that "*the words "person" and "whoever" include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals.*" The Supreme Court has ruled along such lines since the emergence of the modern corporate form in the 19th century. (With the rise of general incorporation statutes after the Civil War, any entrepreneur became able to use the corporate form.) "Corporate personhood" has become settled, and is unambiguous as a matter of law.

On a theoretical level, the courts have generally supported the so-called aggregate theory of the firm. That is, the notion that the corporation is *"an association of individuals contracting with each other in organizing the corporation, with its core attributes as an artificial legal person supplemented by the attribution to it of constitutional rights of its shareholders."* (See Philip Blumberg, *The Corporate Personality in American Law: A Summary Review*, AM. J.COMP. L. 49, 49 (1990))

In *The Railroad Tax Cases*, 13 F. 722, 744 (C.C.D. Cal. 1882), Justice Field encapsulated the core concept underlying the aggregate theory succinctly:

> *"It would be a most singular result if a constitutional provision intended for the protection of every person against partial or discriminatory legislation by the states should cease to exert such protection the moment the person becomes a member of the corporation. . . . The courts will always look beyond the name of the artificial being to the individuals whom it represents."*

6

Even older judgments have looked past the artificial nature of the corporation to emphasize the "individual[s] whom it represents." For instance, *Proprietors of Charles River Bridge v. Proprietors of Warren Bridge*, 36 U.S. 420 (Pet. 1837)

> "It is the object and effect of the incorporation, to give to the artificial person the same capacity and rights as a natural person can have. . . . It bestows the character and properties of individuality on a collective and changing body of men, by which their rights become as sacred as if they were held in severalty by natural person. . . ."

**Yet, even with all of that said, there has been a vast, and much commented upon, expansion in corporate rights over the past 13 years.**

In 2008, *Citizens United v. Federal Election Commission* 558 U.S. 310 (2010) was said, perhaps somewhat wrongly in light of the above, to have marked a pivotal shift in the court's understanding of corporations and their legal rights. A nonprofit corporation, Citizens United, challenged the constitutionality of a federal statute which suppressed their ability to participate in electioneering campaigns. The Supreme Court found that the statute's prohibition was an unconstitutional ban on political speech -- for, as the corporation is fundamentally an association of individuals, the corporation should not be treated differently from a natural person under the First Amendment.

In so doing, the Supreme Court explicitly endorsed the aggregate theory of the firm, and gave their support to the notion that corporations deserve legal rights because those rights ultimately protect the corporations' real-life constituents.

This point is sharpened when one considers *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014), wherein it was held that corporations *themselves* have a right to religious freedom under the First Amendment under federal statute, and are entitled to an exemption from the ACA mandate to cover birth control in employee health plans. In his majority opinion, Justice Alito pointedly emphasizes that the purpose of the legal fiction of corporations as persons is ultimately for the benefit of humans: "*protecting the free-exercise rights of corporations like Hobby Lobby . . . protects the religious liberty of the humans who own and control those companies.*"

Hobby Lobby makes clear the proposition that *the protection of the individuals who make up the firm* is the key issue at stake, *not the protection of the firm in its own right, as a separate entity.* <u>*Along exactly the same lines, affording corporations the ability to defend themselves pro se would protect the individual freedoms of the humans who own and operate corporations.*</u> This includes the freedom to assert one's rights, the freedom to defend oneself in court regardless of financial status, and the freedom not be deprived of one's livelihood by court or government action, which is a freedom of unparalleled importance. For, as Shakespeare once had Shylock say, "*you take my life / When you do take the means whereby I live.*"

The notion that the people behind corporations need any further protection might seem unusual, given the high profile and obvious financial and political power of so many large corporations. But this notion is no less true for all that, for the large corporation is the exception rather than the rule: The vast majority of corporations in this country are closely held. The IRS estimates that there are more than 5 million

active S corporations in the United States, and over a million active C corporations. Only a tiny fraction of these corporations are publicly traded; the number of publicly traded American corporations peaked at 8884 in 1997, and is now closer to 6000. So although the word "corporation" is often casually associated with the famous logos of powerful mega-corporations, the overwhelming majority of corporations in the USA are nothing like Amazon or Exxon, but instead are small owner-managed firms: The local grocer; the small town real-estate management firm; the cell-phone repair shop. The individuals behind these small corporations would be protected if they can assert a pro se right; it would improve their access to justice, and, pointedly, would somewhat alleviate the *coercive* or threatening aspect of litigation *in itself*. It would guarantee small firms the opportunity to be heard; for, whether they are mounting a defense or claiming a legal right, there is no way to determine the truth of their position except by adjudication. Failure to do so denies them access to the courts.

      The Dictionary Act does not distinguish between closely-held corporations, publicly-traded corporations, and nonprofit corporations. It designates all "corporations" as persons. The corollary may well be that *all* corporations deserve to be able to exercise pro se privileges. This is worth special mention because although it would benefit the vast majority of closely-held corporations, it *would not* benefit large publicly-traded corporations, and, by at least partially ameliorating the coercive aspect of litigation, may even inconvenience them. It would become that much harder to bully smaller firms in negotiations, or destroy them in legal wars of attrition.

**3. Non-Lawyer Representation in the Courts Now Exists.**

Arizona has just started to allow non-lawyers to practice law as "paraprofessionals," and has also recently begun to permit non-lawyer ownership and direction of — and outside investment in — law firms. With these innovations, the right to practice law is evidently becoming more expansive, and these innovations were *explicitly* instituted for the aforementioned reasons of access to justice and the protection of citizens' rights. *Non-lawyers already argue cases on behalf of clients in Arizona.* Though there are admittedly certain limitations on the ability of paraprofessionals to practice law, "*only lawyers may represent others in court,*" is no longer a truism. On balance, this is a point in favor of allowing a corporate pro se right.

**4. There is a Constitutional Argument in Favor of a Corporate Pro Se Right.**

It must also be argued that corporations may enjoy a constitutional right to represent themselves pro se.

The Fifth Amendment clearly states that one cannot be denied one's property without due process of law, and the Fifth Amendment has been found to be applicable in civil cases. In a rare case of Constitutional reiteration, the Fourteenth Amendment says much the same thing: "nor shall any State deprive any person of life, liberty, or property, without due process of law"

The Arizona Constitution also contains the same language, (Ariz Const, 2 24 Section 4): "No person shall be deprived of life, liberty, or property without due process of law."

Being *forced* to pay for legal representation — on pain of a default judgment which is tantamount to a death sentence for many a corporation, and in many cases would inflict terrible injustice — *is plainly deprivation of property before judgment.*

This is especially true as there is a severe paucity, if not an outright lack, of Legal Aid services for small businesses and corporations. And in contrast to Plaintiffs' firms who routinely accept cases on a contingency basis, virtually no law firms will take on the defense of a corporation on contingency. Thus in order to defend themselves or bring claims, corporations must pay, *before and without judgment.* Furthermore, *begging for assistance on a contingency basis, hat in hand, is injurious to one's dignity*; mounting one's own defense pro se is the more honorable thing.

The Arizona Constitution also notes that "[n]o law shall be enacted granting to *any citizen, class of citizens, or corporation* other than municipal, privileges or immunities which, **upon the same terms**, shall not equally belong to all citizens or corporations." (Emphasis added.) The ability to argue one's case in court is a privilege, and has been referred to as such, but does not belong equally to all citizens and corporations. Private citizens plainly enjoy a pro se right denied to corporate citizens.

**5. There is Precedent**

There is little precedent for a corporate pro se right, but there *is* precedent.

In *Sellent-Repent Corp. v. Queens Borough G. E. Co.,* 160 Misc. 920, 290 N.Y.S. 887 (N.Y. Misc. 1936), a New York court determined that a corporation can represent itself.

11

> *"A corporation is a legal entity, often spoken of as an artificial person and by the same fiction like a natural body having power to act and reason. A corporation may employ an agent or attorney to act on its behalf in the same manner as a natural person, but the act of the corporate officer in employing an agent is the act of the corporation. [...] When a corporation does not go outside its own corporate machinery in the performance of a corporate act, it is acting in person and upon an equal footing with a natural person, including the right to sue in person."*

Similarly, and more forcefully, the Eastern District of New York allowed a corporation to represent itself in bankruptcy, in *Matter of Holliday's Tax Services, Inc.,* 417 F. Supp. 182 (E.D.N.Y. 1976). There the court forcefully noted:

> *"The theory is clear. A corporation is an artificial entity which can act only through agents. 9 Fletcher on Corporations § 4463 (1931, Cum.Supp.1975). Courts require that a special form of agent, an attorney, appear for corporations in litigation for the "protection of the courts and the administration of justice." Mercu-Ray Industries, Inc. v. Bristol-Myers Company, 392 F.Supp. 16, 19 (S.D.N.Y.), aff'd, 508 F.2d 837 (2d Cir. 1974). No doubt the rule protects the courts "from pleadings awkwardly drafted and motions inarticulately presented." Simbraw, Inc. v. United States, 367 F.2d 373, 375 (3d Cir. 1966).*
>
> *"A person's day in court is, however, more important than the convenience of the judges. We recognize this hierarchy of values when we*

*guarantee by statute (28 U.S.C. § 1654) and Constitution (Faretta v. California, 422 U.S. 806, 834, 95 S.Ct. 2525, 2540-41, 45 L.Ed.2d 562 (1975)) the right of real persons to appear pro se. To require this corporation to appear by a lawyer is effectively to exclude it and its sole shareholder from the courts."*

In *Victor Co. v. Sleininger*, 255 App. Div. 673 (N.Y. App. Div. 1939), the court made much the same argument, and further asked a question now in front of this Court:

*"Suppose a corporation were too impoverished to employ a lawyer to defend it, or suppose it had a large claim it believed to be just but could find no lawyer who would take the case, believing it hopeless, should the corporation be denied its day in court?"*

There are numerous other cases where business and other artificial entities did not hire representation, but were able to have their day in court. *Quarrier v. Peabody Ins. Co.* 10 W. Va. 507, held that while a corporation cannot appear in propria persona, it may appear by its president. The Ninth Circuit Court of Appeals, in *United States v. Reeves* 431 F.2d 1187 (9th Cir. 1970), reversed a district court's ruling that a partner could not represent a partnership. In *United States v. Burk*, EP-14-CR-240-DCG (W.D. Tex. Jun. 18, 2014), a corporation was appointed representation. In *Fraass Survival Systems v. Absentee Shawnee*, 817 F. Supp. 7 (S.D.N.Y. 1993), an Indian tribal government was permitted to appear pro se. In reviewing these cases, it is clear that the choice is not necessarily a binary one between buying representation and default; other possibilities are left to the discretion of the Court.

**6. On D-Beam Ltd. P'ship v. Roller Derby Skates**

13

Though Defendant is aware of the precedent the Court has cited in *D-Beam Ltd. P'ship v. Roller Derby Skates, Inc.*, 366 F.3d 972, 973 (9th Cir. 2004), Defendant believes, as previously stated, that there has been an expansion in corporate rights since that time, that the logical basis for the prohibition of corporate pro se representation is circular and does not stand up to careful scrutiny, and, more to the point here, that D-Beam Ltd. P'ship v. Roller Derby Skates has peculiarities that might be pointed out.

D-Beam was a limited liability partnership, where Brian Evans — who was not an attorney — was general partner and majority, not sole, shareholder. Representing himself and D-Beam pro se, Evans filed suit in California against Roller Derby on claims arising out of a licensing agreement between D-Beam and Roller Derby, and on claims of usury out of promissory notes advanced by Roller Derby to Evans. The case was removed to Federal district court on basis of diversity jurisdiction, where judgment was eventually entered for defendants. Evans then filed a notice of appeal on his own behalf and ostensibly on behalf of D-Beam.

Following an initial briefing by Evans, The Ninth Circuit took the unusual step of appointing *pro bono* counsel to assist Evans with a supplementary briefing. Ultimately, however, the Ninth Circuit ruled: "Because Evans appealed pro se, we lack jurisdiction over D-Beam's claims and they are dismissed."

However, the Ninth Circuit seems to have taken particular issue with the procedural manner in which Evans filed his appeal:

> "In Bigelow v. Brady, this circuit held that a notice of appeal signed and filed on behalf of a corporation by a corporate officer was valid even though it

14

*was not signed and filed by counsel. 179 F.3d 1164, 1165 (9th Cir. 1999). Although in this case Evans signed the notice of appeal, he did not sign on behalf of the partnership. See Fed.R.App.P. 32(d) (requiring that the party or its counsel sign every paper filed with the court). The signature line reads only "Brian Evans, pro se," not "Brian Evans, pro se, and on behalf of D-Beam Limited Partnership," and throughout the notice, Evans refers to "plaintiff," not "plaintiffs." See Fed.R.App.P. 3(c)(2) ("A pro se notice of appeal is considered filed on behalf of the signer . . ., unless the notice clearly indicates otherwise.").* ***Had the notice of appeal, as in Bigelow, related only to claims on behalf of D-Beam, the notice may have been adequate . . .***" (Emphasis added.)

The Ninth Circuit thus seems to have left open the possibility that Evans *could* have filed a pro se appeal on behalf of D-Beam — in other words, that *D-Beam* could have appealed pro se — had proper court procedures and practices been followed.

In the case at hand now before this Court, Diamond Age Corporation begs the Court's permission to proceed pro se in the interests of fairness and access to justice. Should the Court decline to grant this permission, and does not fashion an alternate remedy, Diamond Age will endeavor to retain counsel however possible. ***Diamond Age does not intend to "proceed pro se" without the leave of the Court, and will comply with the wishes and orders of the Court.***

**B. Personal Background, Request for Relief, and Request for Stay**

In light of all of the above, I, Jacob Ganor, President and sole shareholder of Diamond Age Corporation, defendant in the above-entitled action, request the Court to

allow me proceed pro se on behalf of Diamond Age Corporation, and do respectfully represent and state as follows:

I have received and read the complaint, understand it fully, and am fully cognizant of all developments in this case to date.

I have discussed this case with prior counsel, namely Mr. Jim Reed at Udall Shumway. Mr. Reed, however, is unaware of this motion and did not assist in any way.

I am of sound mind and body. I have never been convicted of a crime, nor indicted, nor have I ever had any contact whatsoever with the civil justice system aside from this case. I have never experienced psychiatric problems, nor have I been confined to a mental institution, nor do I take any medications such as antidepressants.

I am an inventor who has filed for patents on a pro se basis, as well as with the assistance of counsel, and have had several patents granted in my name, at least one of which was wholly drafted by my own hand. Several more are pending. I have therefore proven capable of navigating that aspect of the legal system for myself.

I understand that if the Court grants my petition to represent myself, I will be responsible for preparing my case for trial and trying my case. I understand that I will be bound by the same rules as an attorney. I understand that if I fail to do something in a timely manner, or make a mistake because of my unfamiliarity with the law, I will be bound by those decisions and must deal with them myself.

I make this request with open eyes and upon considerable reflection. I am aware that I will need to do my own legal research — which I trust this motion indicates I am capable of — and may be deprived of access to investigational and legal resources.

Defendant, Diamond Age Corp., is a closely-held private corporation. I personally incorporated it. There is only one shareholder, and that is myself. I am also its President. *I can certify to the court that Diamond Age's financial position is such that it is unlikely to survive if it is forced to pay for legal representation for the duration of what looks certain to be a very long and hotly contested case, but that it can easily survive if allowed to argue its case pro se.* The costs, and the subsequent cutbacks that must be made elsewhere to cover those costs, are simply too onerous to bear. As Plaintiff has rebuffed our efforts at fair settlement without so much as a counteroffer, the case looks likely to proceed to trial. Must Diamond Age abandon its defense and its meritorious claims on that account, when true justice can be served by allowing Diamond Age to appear in the person of its president and sole shareholder?

In view of the above, Diamond Age requests leave to appear in the person of its president and sole shareholder, who will represent the corporation pro se. Should the Court not see fit to grant this relief, I humbly request that the Court fashion an appropriate remedy in the interests of justice.

Lastly, a stay in proceedings is requested until the resolution of this motion, and for as long as this matter is under consideration. This should, I believe necessarily, stop the clock on the deadline to acquire representation, which has 13 calendar days remaining as of this writing.

DATED and RESPECTFULLY SUBMITTED this 4th day of May, 2021.

_____

Jake Ganor
President and Sole Shareholder, Diamond Age Corp.

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of May 2021, I have mailed this document via express courier to the Clerk's Office, and have e-mailed it to:

Bradley A. Burns, Esq.
bburns@dickinsonwright.com
Amanda E. Newman, Esq.
anewman@dickinsonwright.com
Dickinson Wright PLLC
1850 North Central Avenue, Suite 1400
Phoenix, AZ 85004
*Attorneys for Plaintiff*

_____
Jacob Ganor